Matthew S. Parmet (CSB # 296742)
mparmet@brucknerburch.com
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Ste. 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065

**Attorneys for Plaintiff**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| DWIGHT WOODS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CENERGY PARNERS, LLC, a Delaware corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:17-cv-08437<br><br>**Plaintiff's Original Class and Collective Action Complaint for Damages (with Jury Demand)**<br><br>1. **Failure to pay overtime compensation (Fair Labor Standards Act, 29 U.S.C. 201, *et seq*.);**<br>2. **Failure to pay wages (CAL. LAB. CODE §§ 510, 1194, 1194.5; IWC Wage Order 16-2001);**<br>3. **Failure to provide compensation for missed meal and rest periods (CAL. LAB. CODE §§ 226.7, 512; IWC Wage Order 16-2001);**<br>4. **Violations of record keeping requirements (CAL. LAB. CODE § 226);**<br>5. **Misclassification penalties (CAL. LAB. CODE § 226.8);**<br>6. **Advising misclassification (CAL. LAB. CODE § 2753);**<br>7. **Waiting time penalties (CAL. LAB. CODE § 203);**<br>8. **Violation of Unfair Competition Law (CAL. BUS. & PROF. CODE § 17200, *et seq*.).** |

## SUMMARY

1. Plaintiff Dwight Woods worked for Defendant Cenergy Partners, LLC ("Cenergy") as a drilling consultant, charged by Cenergy with enforcing its policies and procedures on its wellsites.

2. Drilling consultants are also known as company men, drilling supervisors, drillsite consultants, wellsite consultants, or wellsite supervisors.

3. No matter the precise job title, these drilling consultants perform the same basic job duties.

4. Despite working exclusively for Cenergy and working on Cenergy's own wellsites, plants, and facilities, Cenergy did not treat Woods as an employee.

5. Cenergy classified Woods as an independent contractor for purposes of the Fair Labor Standards Act ("FLSA") and California law.

6. The nature of Woods's working relationship with Cenergy is that of an employer-employee relationship, and he is entitled to the benefits of an employee under the FLSA and California law.

7. Woods worked overtime while working for Cenergy.

8. Cenergy paid Woods a day rate.

9. Cenergy did not pay Woods a salary.

10. Cenergy did not pay Woods hourly and overtime.

11. Cenergy misclassified Woods and all drilling consultants as independent contractors.

12. Woods and the other day rate drilling consultants are similarly situated for the purposes of the FLSA and California law.

13. Woods seeks back wages, liquidated damages, attorney fees, costs, and all other remedies available under the FLSA and California law.

## JURISDICTION AND VENUE

14. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action involves a federal question under the FLSA, 29 U.S.C. § 216(b).

15. The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE PARTIES

17. Woods worked exclusively for Cenergy as an drill site manager from approximately March 2012 to February 2016.

18. Throughout his employment with Cenergy, Woods was paid a day rate with no overtime compensation.

19. Cenergy classified Woods as an independent contractor.

20. Woods's consent to be a party plaintiff is attached as Exhibit A.

21. Woods brings this action on behalf of himself and all other similarly situated drilling consultants, who were classified as independent contractors and paid by Cenergy's day rate system, regardless of job title.

22. Cenergy paid each of these workers a flat amount for each day worked.

23. Cenergy did not pay these workers overtime for all hours that they worked in excess of 40 hours in a workweek, as required by the FLSA.

24. Woods represents at least two classes of similarly situated co-workers.

25. Woods represents a class of similarly situated day rate independent contractors under the FLSA pursuant to 29 U.S.C. § 216(b). The FLSA Class is defined as:

> **Independent contractors employed by, or working on behalf of, Cenergy Partners, LLC as drilling consultants and working in the United States in the past three years who were paid a day rate.**

26. Woods represents a class of similarly situated day rate independent contractors under the California Labor Code pursuant to Federal Rule of Civil Procedure 23. The California Class is defined as:

> **Independent contractors employed by, or working on behalf of, Cenergy Partners, LLC as drilling consultants and working in California in the past four years who were paid a day rate.**

27. Collectively, the FLSA Class and California Class are referred to as the "Class Members."

28. Cenergy is a foreign corporation organized under the laws of Delaware.

29. Cenergy maintains an office in Los Angeles County, California.

30. Cenergy's principal office in California is located in Los Angeles County.

31. Cenergy maintains an office in this District.

32. Cenergy's principal office in California is located in this District.

33. Cenergy is a resident of Los Angeles County, California.

34. Cenergy is a resident of this District and Division.

35. Cenergy may be served by serving its registered agent for service of process: **Cogency Global, Inc., 1325 J St., Ste. 1550, Sacramento, CA 95814**.

36. Woods is informed and believes, and thereby alleges, that at all relevant times Cenergy and Defendants Does 1 through 10 were affiliated, and each was the principal, agent, servant, partner, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor or predecessor in interest, joint ventures, and/or joint enterprises of all or some of the other defendants.

37. Woods is informed and believes, and thereby alleges that, due to the relationship between Cenergy and Defendants Does 1 through 10, that such persons or entities were joint employers for the purposes of the FLSA. *See* 29 C.F.R. § 791.2.

38. Woods is unaware of the true names of Defendants Does 1 through 10, and so Woods sues those defendants under said fictitious names. Woods will amend this complaint to show the true names and capacities of such fictitiously named defendants after the same has been ascertained.

39. Because the true names of Does 1 through 10 are currently unknown to him, Woods refers to all Defendants collectively as "Cenergy" throughout this Complaint.

## COVERAGE UNDER THE FLSA

40. For at least the past three years, Cenergy has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

41. For at least the past three years, Cenergy has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

42. For at least the past three years, Cenergy has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the

FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

43. For at least the past three years, Woods and the FLSA Class were engaged in commerce or in the production of goods for commerce.

44. For at least the past three years, Cenergy treated Woods and the FLSA Class as employees and uniformly dictated the pay practices to which Woods and its other employees (including its so-called "independent contractors") were subjected.

45. Cenergy's misclassification of Woods as an independent contractor does not alter its status as an employer for purposes of this FLSA collective action.

## FACTS

46. Cenergy is in the business of providing personnel for oil and natural gas exploration and production. *See* Cenergy, Home, http://www.cenergyintl.com (last visited Nov. 17, 2017).

47. To do this, Cenergy places its employees with oil and gas exploration and production companies across the United States, including California.

48. Every Cenergy job site adheres to Cenergy policies and procedures.

49. Cenergy's day rate drilling consultants are classified by Cenergy as independent contractors.

50. Cenergy relies upon its drilling consultants to perform work integral to Cenergy's operations.

51. Cenergy created an employer-employee culture between it and its drilling consultants.

52. Cenergy determines the schedules worked by its drilling consultants.

53. Cenergy provides all the essential equipment and tools for its drilling consultants to perform their jobs.

54. Cenergy sets the rates of pay its drilling consultants receive.

55. Cenergy employs its drilling consultants for extended periods of time.

56. Cenergy employees direct its drilling consultants.

57. Cenergy has the ultimate authority to hire, discipline, or fire its drilling consultants.

58. Cenergy made the decision to treat its drilling consultants as independent contractors, not as employees.

59. Despite requiring overtime work, Cenergy does not pay overtime compensation to this district group of workers.

60. Neither does Cenergy pay a salary to this distinct group of workers.

61. All the while, Cenergy's drilling consultants perform the same duties of an employee.

62. Cenergy controlled all meaningful aspects of its drilling consultants' jobs to ensure its strategic objectives were fulfilled.

63. Even though Woods often worked away from Cenergy's traditional offices without the presence of an in-person Cenergy superior, Cenergy still controlled all aspects of Woods's job activities by enforcing mandatory compliance with Cenergy's policies and procedures.

64. Cenergy's drilling consultants all perform the same or similar job duties that are integral to Cenergy's business operations and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

65. The drilling consultants also worked similar hours and were denied overtime because of the same illegal pay practice.

66. Cenergy's policy of treating its drilling consultants as independent contractors violates the FLSA.

67. Even if Cenergy treated these workers as employees, its day rate pay structure did not meet the salary basis test.

68. Woods was economically dependent on Cenergy during his employment.

69. Because Woods and Cenergy's other drilling consultants were misclassified as independent contractors by Cenergy, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

70. Cenergy day rate system violates the FLSA and California law, because Woods and the other Class Members did not receive any pay for hours worked over 40 hours each week.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

71. Numerous drilling consultants have been victimized by this pattern, practice, and policy, which are in willful violation of the FLSA.

72. Many of these drilling consultants have worked with Woods and have reported that they were paid in the same manner and were not properly compensated for all hours worked, as required by the FLSA.

73. Thus, from Woods's observations and discussions with these drilling consultants, he is aware that the illegal practices or policies of Cenergy have been imposed on a distinct group of drilling consultants.

74. These workers all were classified as independent contractors, received a day rate, regularly worked in excess of 40 hours per week, and were not paid overtime compensation.

75. These drilling consultants are victims of Cenergy's unlawful compensation practices and are similarly situated to Woods in terms of relevant job duties, pay provisions, and employment practices.

76. Cenergy's failure to pay wages and overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies and practices, which are not dependent on the personal circumstances of the day rate drilling consultants.

77. Thus, Woods's experiences are typical of the experiences of the drilling consultants.

78. The specific job titles or precise job locations of the various drilling consultants does not prevent collective treatment.

79. Woods has no interest contrary to, or in conflict with, the members of the FLSA Class and California Class. Like each member of the proposed classes, Woods has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

80. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

81. Absent this action, many Class Members likely will not obtain redress of their injuries and Cenergy will reap the unjust benefits of violating the FLSA and California law.

82. Furthermore, even if some of the Class Members could afford individual litigation against Cenergy, it would be unduly burdensome to the judicial system.

83. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

84. The questions of law and fact common to each of the Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether Cenergy employed the Class Members within the meaning of the FLSA and California law;

    b. Whether the Class Members were exempt from overtime;

    c. Whether Cenergy's decision to not pay overtime to the Class Members was made in good faith; and

    d. Whether Cenergy's violation of the FLSA and California law was willful.

85. Woods's claims are typical of the Members. Woods and the Class Members have sustained damages arising out of Cenergy's illegal and uniform employment policy.

86. Woods knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

87. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

88. All day rate drilling consultants, regardless of their precise job requirements or rates of pay, are entitled to be properly compensated for all hours worked in excess of 40 hours per week. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

**FIRST CAUSE OF ACTION—VIOLATION OF THE FLSA**

89. Woods incorporates by reference all preceding paragraphs.

90. Cenergy has violated, and is violating, section 7 of the FLSA, 29 U.S.C. § 207, by employing day rate drilling consultants in an enterprise engaged in commerce or in the production of

goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such day rate drilling consultants for their employment in excess of 40 hours per week at rates no less than 1.5 times the regular rates for which they were employed.

91. Cenergy knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the day rate drilling consultants overtime compensation.

92. Cenergy's failure to pay overtime compensation to these day rate drilling consultants was neither reasonable, nor was the decision not to pay overtime made in good faith.

93. Accordingly, Woods and all those who are similarly situated day rate drilling consultants are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

**SECOND CAUSE OF ACTION—FAILURE TO PAY WAGES UNDER CALIFORNIA LAW**

94. Woods incorporates by reference all preceding paragraphs.

95. The California Labor Code requires that all employees, including Woods and the California Class, receive time and one-half overtime premium compensation for hours worked over 8 in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Order 16-2001.

96. Despite working over 8 hours a day as part of their normal and regular shift, Woods and the California Class did not receive any overtime compensation for all hours worked over 8 in one day.

97. The California Labor Code also requires that all employees, including Woods and the California Class, receive two times the overtime premium compensation for hours worked over 12 in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Order 16-2001.

98. Although Woods and the California Class occasionally worked over 12 hours in one day, they did not receive the "double time" compensation required by California law.

99. The California Labor Code requires that all employees, including Woods and the California Class, receive two times the overtime premium compensation for hours worked over 8 in one day, in the seventh day of a workweek. CAL. LAB. CODE §§ 510, 551–52 (2017); IWC Wage Order 16-2001.

100. Although Woods and the California Class regularly worked 7 days a week, for at least 12 hours a day, they did not receive the "double time" compensation required by California law for all hours over 8 worked on the seventh day.

101. This pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation is unlawful and entitles Woods and the California Class to recover unpaid balance of the full amount of overtime wages owing, including liquidated damages, interest, attorneys' fees, and costs of suit pursuant to California Labor Code section 1194.

### THIRD CAUSE OF ACTION—FAILURE TO PROVIDE COMPENSATION FOR MISSED MEAL AND REST PERIODS

102. Woods incorporates by reference all preceding paragraphs.

103. In accordance with the mandates of California Labor Code sections 226.7 and 512, and applicable IWC Wage Orders, Woods and the California Class had the right to take two uninterrupted 30-minute meal periods for each day they worked 10 hours per day and a 10 minute rest period for every 4 hours worked per day. CAL. LAB. CODE §§ 226.7, 512; IWC Wage Order 16-2001.

104. Although the California Labor Code requires that all employees, including Woods and the California Class, receive two, 30-minute meal-period breaks when employed for 10 hours per day, Woods and the California Class did not receive two meal-period breaks for each day worked, despite working shifts of 12 hours or more. CAL. LAB. CODE § 512; IWC Wage Order 16-2001.

105. As a pattern and practice, Cenergy did not provide Woods and the California Class with meal-period breaks, and did not provide proper compensation for this failure as required by California law.

106. Although the California Labor Code requires that all employees, including Plaintiff and the California Class, receive a 10-minute rest period for every 4 hours worked, Woods and the California Class did not receive any rest periods during their shifts of 12 or more hours. CAL. LAB. CODE § 512; IWC Wage Order 16-2001.

107. As a pattern and practice, Cenergy did not provided Woods and the California Class with rest-period breaks, and did not provide proper compensation for this failure as required by California law.

108. Woods and the California Class are entitled to receive compensation, at their regular rate of pay, of one hour for each day they were denied their lawfully required meal- and rest-periods. CAL. LAB. CODE § 512; IWC Wage Order 16-2001.

109. Cenergy's policy fails to provide Woods and the California Class with the legally mandated meal period breaks. Such a pattern, practice, and uniform administration of corporate policy as described herein is unlawful and creates an entitled to recovery by Woods and the California Class in a civil action, for the balance of the unpaid compensation pursuant to Labor Code sections 226.7 and 512, and applicable IWC Wage Orders.

**FOURTH CAUSE OF ACTION—VIOLATIONS OF RECORD KEEPING REQUIREMENTS**

110. Woods incorporates by reference all preceding paragraphs.

111. California Labor Code section 226 requires Cenergy to keep accurate records regarding the rates of pay for their California employees and provide that information to Woods and the California Class with their wage payment.

112. Because Cenergy misclassified Woods and the Putative Class Members as independent contractors, it did not maintain accurate records of Woods and the California Class' daily hours, gross wages earned, net wages earned, and the applicable hourly rates, and did not provide that information to Woods and the California Class with their wages.

113. This pattern, practice, and uniform administration of corporate policy is unlawful and entitles Woods and the California Class to recover all damages and penalties available by law, including interest, penalties, attorney fees, and costs of suit. CAL. LAB. CODE § 226(e).

**FIFTH CAUSE OF ACTION—MISCLASSIFICATION PENALTIES**

114. Woods incorporates by reference all preceding paragraphs.

115. Cenergy has maintained a uniform policy with respect to Woods and the California Class hired by Cenergy to work in California.

116. Under this uniform policy, Cenergy has misclassified Woods and the California Class as independent contractors.

117. Cenergy, at all relevant times, retained control over the manner and means of accomplishing its desired business results, and retained control over its operations, such that an employer-employee relationship was created between Cenergy and Woods and the California Class.

118. Through its misclassification of Woods and the California Class, Cenergy has engaged in a pattern and practice of willful misclassification of its employees as independent contractors for its own financial benefit.

119. Woods and the California Class are entitled to recover the civil penalties specified in the Labor Code for Cenergy's violations of section 226.8 in an amount of not less than $10,000 and up to $25,000 for each violation, in addition to any other penalties or fines permitted by law.

120. Woods and the California Class are entitled to recover their reasonable attorney fees and costs in bringing this action.

121. Cenergy is subject to an order requiring it to provide public notice of its violation of California Labor Code section 226.8, if the Court determines that a violation has been committed. CAL. LAB. CODE § 226.8(e), (f).

### SIXTH CAUSE OF ACTION—ADVISING MISCLASSIFICATION

122. Woods incorporates by reference all preceding paragraphs.

123. Each Defendant, Cenergy, and DOES 1-30, advised the other to treat the Class Members at issue in this case as independent contractors.

### SEVENTH CAUSE OF ACTION—WAITING TIME PENALTIES

124. Woods incorporates by reference all preceding paragraphs.

125. At all relevant times, Cenergy was required to pay Woods and the California Class all wages owed in a timely fashion at the end of employment pursuant to California Labor Code sections 201 to 204.

126. As a result of Cenergy's alleged California Labor Code violations, Cenergy regularly failed to pay Woods and the California Class their final wages pursuant to California Labor Code sections 201 to 204, and accordingly Cenergy owes waiting time penalties pursuant to California Labor Code section 203.

127. The conduct of Cenergy, in violation of Woods and the California Class' rights, was willful and was undertaken by the agents, employees, and managers of Cenergy.

128. Cenergy's willful failure to provide Woods and the California Class the wages due and owing them upon separation from employment results in a continuation of wages up to 30 days from the time the wages were due.

129. Therefore, Woods and the California Class who have separated from employment are entitled to compensation pursuant to California Labor Code section 203.

### EIGHTH CAUSE OF ACTION—VIOLATION OF UNFAIR COMPETITION LAW

130. Woods incorporates by reference all preceding paragraphs.

131. Cenergy has engaged, and continues to engage, in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above by knowingly denying employees: (1) overtime wages required under federal law; (2) overtime wages required by California law; (3) meal- and rest-period break wages; and (4) accurate wage statements.

132. As a result of Cenergy's failure to comply with federal and state law, Cenergy has also violated the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et. seq.*, which prohibits unfair competition by prohibiting any unlawful or unfair business actions or practices.

133. The relevant acts by Cenergy occurred within the 4 years preceding the filing of this action.

134. On information and belief, Cenergy has engaged in unlawful, deceptive, and unfair business practices, pursuant to California's Business and Professions Code section 17200, *et seq.*, including those set forth above, depriving Woods and the California Class of minimum working condition standards and conditions under California law and IWC Wage Orders as set forth above.

135. Woods and the California Class are entitled to restitution for at least the following: restitution for unpaid overtime wages and unpaid California Labor Code § 203 continuation wages.

136. Woods and the California Class are also entitled to permanent injunctive and declaratory relief prohibiting Cenergy from engaging in the violations and other misconduct referred to above.

137. Cenergy is also liable for fees and costs pursuant to California Code of Civil Procedure section 1021.5 and other applicable law.

**JURY DEMAND**

138. Woods demands a trial by jury.

**RELIEF SOUGHT**

139. WHEREFORE, Woods prays for judgment against Cenergy as follows:

    a. For an order certifying a class action under Rule 23 for the purposes of the claims under California law;

    b. For an order certifying this case as a collective action for the purposes of the FLSA claims;

    c. For an order finding Cenergy liable for violations of state and federal wage laws with respect to Woods and all Class Members covered by this case;

    d. For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to Woods and all Class Members covered by this case;

    e. For a judgment awarding Woods and all Class Members covered by this case their costs of this action;

    f. For a judgment awarding Woods and all Class Members covered by this case their attorneys' fees;

    g. For a judgment awarding Woods and all Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

    h. For all such other and further relief as may be necessary and appropriate.

BRUCKNER BURCH PLLC

Respectfully submitted,

By: **/s/ Matthew S. Parmet**
_____
Matthew S. Parmet
(CSB # 296742)
mparmet@brucknerburch.com
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065

**Attorneys for Plaintiff**